June 28, 2017

**VIA CM-ECF**

The Honorable Laurel D. Beeler
United States District Court for the Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102-3483

> Re: Discovery Dispute Arising From Plaintiff's Request for Production of Documents and Things (Set One), *T.D.P., et al. v. City of Oakland, et al.*, No. 3:16-CV-04132-LB (N.D. Cal.); *Perkins and Perkins-Henderson v. City of Oakland et al.*, No. 3:16-CV-04234-LB (N.D. Cal.)

Dear Judge Beeler:

**Statement of the Unresolved Issues.** Pursuant to this Court's Standing Order regarding Discovery, the following are the parties' positions in this dispute regarding the discoverability of documents pertaining to the Oakland Police Department's personnel files including complaint histories, performance evaluations, background investigations, and the mental and physical condition of the four defendant officers, ESI from the four defendant officers' phones, emails, social media, and other electronic devices, and emails to and from investigators and command staff concerning this incident, and OPD policies and training documents. Plaintiff T.D.P.'s lead trial counsel, Michael J. Haddad, met and conferred in person on June 20, 2017 with counsel for Defendant City of Oakland, Blake Loebs, counsel for Defendant Turner, Andre Hill, and counsel for co-Plaintiff Perkins and Perkins-Henderson, EmilyRose Johns. The parties reached a partial agreement as to Plaintiff T.D.P.'s RFP1, but remain at an impasse as to portions of Plaintiffs' requests concerning the above-mentioned documents.

**Plaintiffs' Position[1].** This case arises from Defendant officer s' shooting of Richard Perkins, Jr., on November 15, 2015. Officers had just finished addressing a "sideshow" in East Oakland, and were standing in the street, when Mr. Perkins was seen walking down the sidewalk – not toward any officer – holding a toy gun at his side. Multiple officers and video confirm that Mr. Perkins never raised or gestured with the toy gun, and was never given any opportunity to drop it before the four Defendant officers opened fire. No warning or command was ever given to Mr. Perkins. Within seconds of the shooting, officers could easily see that the item in Perkins' hand was a toy. Mr. Perkins died leaving a 14-year-old daughter, Plaintiff T.D.P., a teenage son, Plaintiff Richard Perkins III, and his mother, Plaintiff Ada Perkins-Henderson.

Plaintiff T.D.P. served her Request for Production of Documents and Things (Set One) by mail on January 31, 2017 to all Defendants. After multiple extensions to respond, on March 30, 2017, Defendants served responses with meritless objections, refusing to produce the clearly relevant and discoverable information addressed herein. (**Ex. A**). Plaintiff needs these documents to adequately prepare for the upcoming mandatory settlement conference and trial, as well as depositions which must occur before settlement conference statements are due.

---

[1] Plaintiffs apologize to the court for the length of this letter brief.

Honorable Laurel D. Beeler
June 28, 2017
Page 2 of 9

Plaintiff made proper requests in Request Nos. 1(a), (d), (i), (j); and 25 for reports and ESI concerning the incident. (*See* **Ex. A**.) First, Defendants unconscionably redefined Plaintiffs' request, choosing to "construe 'reports' . . . to mean official reports made in the regular course of business concerning the OIS," (*id*. at p. 8:21-22; p. 17:18) and No. 1(j) as requesting ESI (*id*. at 18:21-23). Then, Defendants stated that they would not produce any ESI. (**Ex. A** p. 18:23-25; p. 20:1; p. 50:1.). "Plaintiff's Proposed Compromise" addresses this ESI information.

Plaintiff also properly requested relevant information regarding the four defendant officers contained in RFP1 Request Nos. **4** (Defendants' complaint/misconduct histories) **6** (Defendants hiring and background investigations), **7** (Defendants' training re: arrests, detentions, all uses of force, OIS investigations, use of body cameras, bias, and reporting), **8** (Defendants' job performance evaluations and supervision), and **10** (Defendants' physical and mental condition during the incident). (*See* **Ex A**.)

With regard to Request No. 4 (complaint/misconduct histories), Defendants continue to assert that they will not produce any documents except those related to any other OIS in which Defendants were involved, and training limited to use of deadly force. First, there is no unfair burden on the City to produce information of prior investigations of complaints/incidents involving arrests, detentions, use of non-deadly force, bias, and reporting. Such information is related to the issues in this case, and to Defendants' compliance with and notice of the standard of care under the totality of the circumstances for their ultimate use of deadly force. *See, Smith v. City of Hemet*, 394 F.3d 689, 700-02 (9th Cir. 2005) (*en banc*).

Further, with respect to prior uses of force, "[d]iscoverability turns on the existence of a question regarding the reasonableness of the force used by the defendants, **not on the type of force used.**" *Cooley v. City of Vallejo*, No. 2:12-cv-0591 LKK AC P, 2013 U.S. Dist. LEXIS 155175, at *11 (E.D. Cal. Oct. 29, 2013) (emphasis added) The courts use a liberal relevancy standard in § 1983 civil rights, excessive force cases. *See Kelly v. San Jose*, 114 F.R.D. 653, 667-68 (N.D. Cal. 1987). Courts have routinely held that instances of past discipline are important in resolving the issues in cases concerning individual liability, credibility/impeachment, punitive damages, *Monell* liability, and supervisory liability. "In cases involving section 1983 claims, courts have repeatedly held that police personnel files and documents are relevant and discoverable." *Green v. Baca*, 226 F.R.D. 624, 644 (C.D. Cal. 2005). As to individual liability, "[c]ourts will permit the discovery of police personnel files in civil rights cases because the 'information may lead to evidence of a continuing course of conduct reflecting malicious intent,' or 'reveal the defendant officers' patterns of behavior, as well as [their agency's] response to such behaviors." *Beckway v. DeShong*, No. C07-05072-TEH (EDL), 2011 U.S. Dist. LEXIS 105530, at *11 (N.D. Cal. Sept. 19, 2011) (quoting *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal 1995)). Evidence of past disciplines—and disciplines that post-date the Incident—are also relevant as 404(b) evidence. *See* Fed. R. Evid. 404(b)(1)–(2) ("Evidence of a crime, wrong, or other act" may be admissible to prove "knowledge"); *Henderson v. City & Cnty. of S.F.*, No. C05-0234 VRW/WAF, 2007 U.S. Dist. LEXIS 77325 (N.D. Cal. Oct. 9, 2007) (denying motion for mistrial based on admission, under Rule 404(b), of defendant officers' other acts of police misconduct to prove the officers' motive, intent, planning, and absence of mistake); *De la Torre v. City of Salinas*, No. C 09-0626 RMW (PVT), 2010 U.S. Dist. LEXIS 55960, at *2 (N.D. Cal. May 18, 2010) (citing *United States v. Hinostroza*, 297 F.3d 924, 928 (9th Cir. 2002) (compelling production of personnel file

documents because "[t]he information sought could lead to discovery of information regarding the [defendant officer's] motive, intent or preparation (including training) or the absence of mistake or accident, any of which would be admissible under [Fed. R. Evid.] 404(b)[.] It matters not whether the other shooting incident occurred before or after the shooting at issue in this litigation.");

Regarding municipality liability, the evidence used against the municipality may necessarily include evidence of past misconduct on the part of its officers, such as citizen complaints of excessive force, pursuant to an improper training or supervision theory. *See, e.g., Hopkins v. Andaya*, 958 F.2d 881, 888 (9th Cir. 1994). Here, Plaintiffs' *Monell* claim alleges, in part, that the individual Defendants' unconstitutional conduct was set in motion by Defendant City of Oakland's customs, policies, practices, and/or procedures, which were directed, encouraged, allowed, and/or ratified by Defendant former Oakland Police Department Chief Sean Whent. (*See* Doc. 1, ¶ 38).

Finally, this Court noted in the pretrial order (Doc. 43) regarding personnel issues that "it has never seen Oakland resist production pursuant to a protective order and its own practice is to authorize production. There should be no dispute." Clearly this Court envisions production of the personnel file which should not be limited to shooting incidents.

Defendants also refuse to comply with Request No. 7 (training documents beyond use of deadly force). These documents are discoverable and potentially relevant because a jury could find that the defendant officers had alternative methods available to them short of shooting Richard Perkins dead. (*See* 9th Cir. Jury Instruction 9.25 ¶ 6.). Defendants' training sets part of their standard of care under the totality of the circumstances for their ultimate use of deadly force. *See, Smith,* 394 F.3d at 700-02 (9th Cir. 2005) (*en banc*).

Defendants refused to produce any documents related to Requests 6, 8, and 10. (*See* **Ex. A** p. 31:9; 34:28; 36:21.) To establish their *Monell* claim against Defendant City of Oakland, Plaintiffs are also entitled to the complete pre-hiring and hiring documents for the individual Defendant officers to establish their inadequate hiring or "inadequate screening" claim, because they must establish that "'*this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff.'" *M.H. v. Cnty. of Alameda*, 62 F. Supp. 3d 1049, 1088 n.7 (N.D. Cal. 2014) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 412 (1997)). To further support their *Monell* claim, Plaintiffs are also entitled to all documents pertaining to fitness-for-duty testing, including psychological testing, to which Defendant City of Oakland had access. *See Ashford v. City of Milwaukee*, 304 F.R.D. 547, 552 (E.D. Wis. 2015). Plaintiffs should be able to learn whether psychological and/or psychiatric testing shared with Defendant City of the involved officers, including Defendants Hughes, Cairo, Barnard, and Turner, revealed a proclivity to physical violence, aggression, or impulsivity, because "a person suffering from certain kinds of psychological problems could be more likely to commit the kinds of constitutional violations alleged in this case." *Ashford*, 304 F.R.D. at 550-51. Defendants' background investigations and fitness for duty reviews are also relevant to Plaintiff's *Monell* claim for improper hiring. (RFP1 No. 6). Defendants' job performance evaluations are relevant not only to their performance in the incident, but also to Plaintiffs' claims for supervisory and *Monell* liability. (RFP1 No. 8). And, if the OPD had information that a Defendant's mental or physical condition was potentially compromised at the time of the incident, that should be

Honorable Laurel D. Beeler
June 28, 2017
Page 4 of 9

produced as well.  (RFP1 No. 10).  Plaintiffs do not seek Defendant officers' medical records other than to the extent they were already in the custody of the OPD in connection with their job performance.

Additionally, Defendants' invocation of the federal official information privilege fails, because they have failed to make a "**substantial threshold showing**."  *Kelly*, 114 F.R.D. at 669 (emphasis added).  City Defendants' affidavit fails to specifically identify "the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer" with regard to complaints against the involved officers relating to this specific incident.  *Kelly*, 114 F.R.D. at 670.  The affidavit also fails to describe how disclosure of the personnel file would create a substantial risk of harm under a protective order.  *Id*

Finally, this discovery clearly is proportional to the needs of this case.  This is a civil rights wrongful death case.  Congress has long recognized that civil rights plaintiffs act not only on their own behalf when they pursue civil rights litigation.  They act as "private attorneys general" to vindicate all of our civil rights, which Congress has held are of the "highest priority."  *Fox v. Vice*, 563 U.S. 826, 131 (2001), *quoting Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968).  What could be more serious and substantial than police officers' violation of constitutional rights causing the death of a father and son?  Defendants' unreasonable discovery positions have prevented substantive discovery in this wrongful death case.  This case needs to move forward.

**Plaintiffs' Proposed Compromise.** The ESI requested concerns this very incident and its investigation and aftermath.  Plaintiffs request that this court order a search of the defendant officers' emails, cell phones, text messages, and social media for only 90 days following the incident for everything related to this incident, the Plaintiffs, or the decedent.  Outside of the 90-day window, Plaintiff suggests using search terms including but not limited to "Perkins", "sideshow", "gun", "airsoft", "air soft", "weapon", "officer involved shooting", "OIS", "shooting", and "Bancroft."  Plaintiff also requests all emails concerning the incident to and from OPD investigators and command staff.  Defendants' proposal to only use search terms is inadequate.  *See Nat'l Day Laborer Org. Network v. United States Immigration & Customs Enforcement Agency*, 10 Civ. 3488 (SAS), 2012 U.S. Dist. LEXIS 97863 *109 (S.D.N.Y. 2012) ("Simple keyword searching is often not enough: 'even in the simplest case requiring a search of on-line email, there is no guarantee that using keywords will always prove sufficient.'  There is increasingly strong evidence that '[k]eywords searching is not nearly as effective at identifying relevant information as many lawyers would like to believe.'").  Defendants' claim that it would take 36 hours to review only three months of ESI for four police officers is groundless and exaggerated.  Plaintiffs' proposed compromise is not burdensome, and given the fact that police officers shot and killed a non-threatening father and son without warning, the search is proportional to the needs of the case.

Additionally, complaint and misconduct histories going back seven years before the shooting concerning any use of force, arrest, detention, bias, truthfulness, report writing, code of silence, and evidence integrity should be produced pursuant to the protective order already in place.  Finally, Plaintiffs request that the court order Defendants to produce the documents in Requests 6, 7, 8, and 10, pursuant to the protective order where appropriate.

Honorable Laurel D. Beeler
June 28, 2017
Page 5 of 9

**DEFENDANTS' RESPONSE:**[2]

**I.   Brief Explanation of the Facts of the Case:**

Plaintiff's description of the facts of this case bears almost no relationship to what actually occurred – which is bizarre because Plaintiffs have had all of the relevant evidence for months. Just after sunset on November 15, 2015, high on a near fatal level of methamphetamines, Richard Perkins, Jr., rapidly approached 11 uniformed officers who had just disrupted a "sideshow" in East Oakland. As he advanced, while making eye contact with one of the officers, Perkins pulled a near perfect replica of a .50 caliber, black Desert Eagle handgun (with the orange tip removed) out of his waistband. Contrary to Plaintiff's assertions, audio evidence and witness testimony establishes that one or more officer ordered Perkins to get "on the ground" even though they were not required to do so under these circumstances. Perkins failed to follow the officers' commands. He continued to advance and began to raise his gun – which is documented by surveillance video and multiple witness accounts. As he was raising his gun, the four officers who had an unimpeded shot each made the independent decision to shoot to protect themselves and their fellow officers, as every reasonable officer would have done under the circumstances. Contrary to Plaintiffs' assertion, it only became apparent that Perkins' gun was a replica after one of the officers picked it up and noticed that it weighed less than it should.

**II.   Statement of Unresolved Issues and Analysis**:

**A.   Prior Complaints Regarding Officers (RFP # 4):** Plaintiffs seem to argue that they are entitled to all documents regarding any type of complaint or investigation, regardless of whether the complaint pertains to any issue in this case. Though Plaintiffs are correct that personnel records are routinely produced, their incomplete citation to *Green v. Baca* conceals the balancing test underlying such discovery. *See Green v. Baca*, 226 F.R.D. at 645 (limiting potential discovery into personnel files to relevant documents and directing plaintiffs to make a specific offer of proof.) Pursuant to this balancing, Plaintiffs are only entitled to documents concerning complaints that relate directly to the issues of this case, even where *Monell* is alleged. For example, in *Kelly v. City of San Jose*, a Northern District case which Plaintiffs' cite repeatedly, the court considered a similar discovery dispute regarding an excessive force claim involving the use of bodily force and a baton to make an arrest. 114 F.R.D. at 671. There, the plaintiff sought discovery related to all "reports of injuries suffered by other persons while being arrested by defendants." *Id.* The court, however, limited disclosure to situations which directly paralleled the plaintiff's injury – material relating to the use of a baton and use of bodily force in making an arrest.

This case involves an officer involved shooting ("OIS"). Therefore, following the reasoning of *Kelly*, the only relevant complaints regarding the subject officers would be complaints related to the use of firearms and, perhaps, complaints related to the officers' veracity. *See Id.; Nehad v. Browder,* (S.D. Cal., May 10, 2016, No. 15-CV-1386 WQH NLS) 2016 WL 2745411, at 2, 4 (only allowing discovery into similar complaints in case involving an OIS and *Monell* claims.) Here,

---

[2] Though Defendants' Response was initially 2.5 pages, pursuant to this Court's Standing Order which limits Discovery Letter Briefs to 5 pages, Defendants had little choice but to expand its arguments when Plaintiffs revised and lengthened their portion of this letter to beyond that specified in the Court's Standing Order over Defendants' objection.

Plaintiffs' argument that Defendants *could* have done something different, and so arrest, detention, and all other levels of force are relevant, is simply not persuasive. If that were the rule, then there would be no limit on discovering past complaints because officers always *could* have acted differently. Moreover, in this case officers had only a split-second to respond to an individual who approached them holding a replica gun in his hand. In light of those facts, complaints regarding other levels of force, discourtesy, professionalism, arrest procedures, detention procedures, decorum, or tardiness are simply not relevant, and Defendants' final compromise offer is to produce complaints relating to firearms, officer involved shootings, truthfulness or any issues regarding report writing or credibility. (*See Nehad*, *supra*.)

**B. Officer Background Information / Training / Performance Evaluation (RFP # 6, 7, 8, 10):** Plaintiffs are demanding all documents that relate to the background, hiring, training, performance evaluations and medical records of the four defendant officers, regardless of whether such information is relevant to any specific issue in this case. Plaintiffs, however, are not entitled to randomly dig through the officers' background unless those issues are relevant, even when a *Monell* claim is alleged..

Regarding hiring and background documents (RFP No. 6), the Eastern District dealt with this exact issue in *Brooks v. County of San Joaquin,* 275 F.R.D. 528 (E.D. Cal. 2011). There, as here, the plaintiffs demanded the production of every scrap of paper related to the defendant officers' hiring and background under the guise of pursing a *Monell* claim. *Id. at 534.* The court held that because the plaintiffs identified no specific issues related to the hiring or background of any of the defendants, other than a generic *Monell* claim, the relevance of defendant officers' job application documents and background history was too remote to permit discovery. *Id.*

Regarding prior evaluations (RFP No. 8) Plaintiffs' Request is again, overbroad and infringes upon officers' privacy rights. *See James v. Hayward Police Department* (N.D. Cal., Feb. 27, 2017, No. 13-CV-01092-SI) 2017 WL 2437346, at *2 (balancing officers' privacy rights against discovery request for evaluations, and limiting such discovery to the extent such records related to similar uses of excessive force.) As a result, Defendants compromise offer is to provide such records, to the extent they relate to a similar use of force or firearm discharge or truthfulness.

Regarding training records, Plaintiffs' RFP No. 7 is overbroad, seeking 14 categories of training documents, very few of which have any relevance to this case. As phrased, Plaintiffs seek all training documents, including manuals, certificates, and any other documents, which officers received *at any point*, including academy training, POST training, on the job training, related to all topics of police training, including "professionalism and decorum." Plaintiffs have no basis to insist that Defendants produce such unrelated training documents. *See Kelly v. City of San Jose*, 114 F.R.D. at 671 (ordering disclosure of training materials related to the level of force used against plaintiff, but not others). Nevertheless, Defendants have agreed to produce documents related to OPD training regarding the *majority* of the topics under RFP 7(f-n, q, r), and training on deadly force (e). Plaintiffs' statement that Defendants only agreed to produce deadly force training documents is simply untrue. Plaintiffs bring this matter to the Court to compel production of just a few categories of training (arrest, detention, discourtesy) on the theory that such could potentially be relevant pursuant to *Smith v. Hemet*. However, *Smith v. Hemet*, 394 F.R.D. at 700, is inapplicable. Most importantly, *Hemet* is not a discovery case. In *Hemet*, the officers used pepper spray and a

canine to subdue a suspect and the court held that alternative procedures, such as a control hold, might have been more appropriate. Here, Defendants had seconds to react to a rapidly approaching individual who had just pulled a gun out of his waistband. No reasonable argument could be made that the officers should have used a baton, a control hold, or a canine in this situation, or that the officers' training in "professionalism and decorum" has any bearing on this case. These requests have been propounded merely to harass. In this case, the only conceivably relevant training is for those areas that Defendants have already agreed to provide as a compromise, which is as follows: (1) training as to deadly force; (2) firearms; (3) lists of scenarios in shoot/don't shoot or similar training; perception/reaction issues; (4) critical incidents; (5) use of cameras or recording devices; (6) how to respond to officer involved shooting investigations and/or internal affairs investigations; (7) summoning/provision of medical care; report procedures/requirements; (8) truthfulness and (9) evidence integrity.

Regarding Defendant Officers' medical records (RFP 10), Plaintiffs must similarly identify some concrete relevance to review them, and have failed to do so. *See Lawrence v. City and County of San Francisco* (N.D. Cal., June 14, 2016, No. 14-CV-00820-MEJ) 2016 WL 3254232 [in excessive force case, finding that plaintiffs' request for officer's physical and psychological records was overbroad and limiting discovery to the incident and similar events]. Furthermore, Plaintiffs' citation to *Hopkins v. Andaya* to obtain medical records is distinguishable. 958 F.2d 881. In *Hopkins*, the defendant officer's medical report was relevant because it contradicted the officer's statements regarding the seriousness of his struggle with the plaintiff, which allegedly justified the defendant officer's use of deadly force. *Id.* at 885-886. Here, there is no similar issue regarding an officer claiming a physical altercation, or a similar contradiction regarding the Defendants' statements. Similarly, Plaintiffs' citation to *Ashford v. City of Milwaukee*, 304 F.R.D. at 552 to support their blanket request for psychological records does no such thing. In *Ashford,* a Wisconsin District Court held that psychological testing records *that were shown to the employer* could, potentially, be relevant to a *Monell* claim by establishing a proclivity toward the alleged inappropriate behavior. *Id.* at 551. Although *Ashford*, is not controlling, as a compromise, Defendants would be willing to produce medical records, *in camera*, including psych records that have been conveyed to OPD that reflect a propensity towards violence, or medical records in the possession of OPD that indicate a medical issue that could have affected the officer's behavior that night. (*See Soto,* 162 F.R.D. at 618 [holding discovery of medical records of defendants overbroad, but considering relevance *in camera*.])

**C.     ESI Information (RFP # 1(j)[3] & 25):** Plaintiffs have rejected Defendants' suggestion to use reasonable search terms to locate relevant e-mails and have, apparently (as mentioned for the first time in this letter) even rejected Defendants suggestion that ESI discovery should be limited to the four individual defendants. Instead, Plaintiffs now seem to insist (for the first time) that Defendants' attorneys personally examine every e-mail, made by the an unspecified number of individuals (all four defendants, as well as the entire command staff and all investigators), *regardless of the subject matter,* for 90 days after the OIS and that Defendants attorneys themselves must examine every e-mail, text message and social media entry for the four individual defendant officers – regardless of the subject matter.

---

[3] Defendants remain unclear as to Plaintiffs' contentions regarding some portions of RFP No. 1(a), (d), (i).

Alternatively, Defendants propose that for work e-mails, Oakland shall use reasonable search terms such as "Perkins," "sideshow," "officer involved shooting," "OIS," "Airsoft", and "Bancroft" to locate relevant ESI related to the four defendant officers. Plaintiffs' have also suggested that the term "weapon" be used, but Defendants believe that term is simply too broad. Search terms for discovery are widely used in modern litigation because of the volume of electronic documents. (*See Electronic Discovery and Keyword Mediation Mandates A Mastery of Technology and Law* (2011) 35 Am. J. Trial Advoc. 243 ["Selecting keywords for searching large volumes of electronically stored information (ESI) is an unavoidable step."]) Yet, Plaintiffs have refused Defendants' reasonable proposal, while insisting on their antiquated and burdensome approach. This is true despite the Northern District's "Checklist" for ESI discovery instructing the parties to identify "specific words of phrases . . . that will be used to identify discoverable ESI." Plaintiffs citation to *Nat'l Day Laborer Organizing Network*, 877 F.Supp.2d at 109, is inapposite. *Nat'l Day Labor* involved a Freedom of Information Act lawsuit and agencies' refusal to communicate their search methodologies to the court, neither of which has any bearing here. Here, search terms are necessary because a document-by-document review of all ESI is impracticable. For example, assuming that each Defendant created six pieces of ESI per day, for three months, 2,160 documents would be generated. Further, assuming 60 documents could be reviewed per hour, it would take 36 hours to review all 2,160 documents. But, Plaintiffs are asking for far more than that. Not only are they insisting that Defendants conduct this search for the four individual defendants, they are now insisting that Defendants conduct this oppressive search for unspecified investigators and unspecified command staff as well. This is excessive and antithetical to the modern approach to ESI. Moreover, such review is particularly unnecessary because Plaintiffs have no reason to believe that anything meaningful will be found in the ESI generated in the three months following the shooting. Still, Defendants' proposal would locate any relevant documents, should it exist.

For the officers' text messages and social media accounts, Defendants suggest that each of the four individual officers should review their devices and accounts themselves to identify any potentially relevant information. Plaintiffs' request, that Defendants' counsel should be required to personally look through every single text and social media entry made by the four defendant officers over a period of 90 days in the off chance there is some reference to this incident – with no regard to how private or personal those messages might be – is unprecedented and would be a gross and unnecessary violation of the officer's right to privacy and unduly burdensome. Defendants suspect that this request is being made for the sole purpose of harassing the officer and burdening Defense counsel.

The parties thank this Court for its time and attention to these matters.

| | |
|---|---|
| */s/ Michael J. Haddad*<br>*/s/ Maya Sorensen*<br>────────────<br>MICHAEL J. HADDAD<br>MAYA SORENSEN<br>HADDAD & SHERWIN LLP<br>Attorneys for Plaintiff<br>T.D.P. | /s/ *Blake P. Loebs*<br>────────────<br>BLAKE P. LOEBS<br>MEYERS, NAVE, RIBACK, SILVER & WILSON<br>Attorneys for Defendants CITY OF OAKLAND, CITY OF OAKLAND POLICE CHIEF SEAN WHENT, OFFICERS JONATHAN CAIRO, JOSHUA BARNARD, ALLAHNO HUGHES |
| */s/ Noel Edlin*<br>*/s/ Andre Hill*<br>────────────<br>NOEL EDLIN<br>ANDRE HILL<br>BASSI, EDLIN, HUIE & BLUM, LLP<br>Attorneys for Defendant<br>JOSEPH TURNER | s/ *EmilyRose Johns*<br>────────────<br>EMILYROSE JOHNS<br>SIEGEL & YEE<br>Attorneys for Plaintiffs<br>RICHARD PERKINS III and ADA PERKINS-HENDERSON |

2830348.3