UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| T.D.P., <br>         Plaintiff, <br>     v. <br> CITY OF OAKLAND, et al., <br>         Defendants. | Case No. 16-cv-04132-LB <br><br> **DISCOVERY ORDER** <br> Re: ECF No. 56 |

## INTRODUCTION

This is a civil-rights suit under the Fourth Amendment and 42 U.S.C. § 1983. It is more specifically an excessive-force and officer-involved-shooting (OIS) case. It grows from a November 2015 incident in which Oakland police officers fatally shot the plaintiff's decedent. The plaintiff has asked the defendants to produce various categories of information, such as complaint histories for the relevant officers, training material, text messages, and social-media posts. The defendants do not deny that some of this material must be produced. They do argue that the plaintiff's requests are excessive, in several ways, and should be limited. This dispute can be resolved without oral argument. *See* Civil L.R. 7-1(b). The court reaches the following conclusions.[1]

---

[1] A second case is related to this one: *Perkins v. City of Oakland*, 3:16-cv-04324-LB (N.D. Cal.). The parties' joint discovery letter was filed only in this case (*T.D.P.*, No. 16-CV-4132).

ORDER – No. 16-cv-04132-LB

# ANALYSIS

Civil discovery is bounded primarily by procedural Rule 26. Under that rule:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "The relevance standard is extremely broad, especially in civil rights excessive force cases." *James v. Hayward Police Dep't*, 2017 WL 2437346, *1 (N.D. Cal. Feb. 27, 2017) (Illston, J.) (citing *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995)). This court too, in this case, has expressed its understanding that police personnel files are generally discoverable in such cases, and are usually covered by a protective order.[2]

Throughout this order, the court has mostly addressed only those specific requests that are discussed in the parties' joint letter. The language of the requests themselves is sometimes turbid, making it hard to grasp exactly what is being sought. The court has thus stuck closely to the discussion in the joint letter.

1. **Request #4 – Prior Complaints**

   **1.1 The Request and Dispute**

   The plaintiff calls this a request for "complaint," "disciplinary," and "misconduct histories" for all "involved officers."[3] The defendants call this a request for "prior complaints." The plaintiff also requests (for seven years preceding the incident) documents "concerning contacts with and/or procedures concerning" a number of topics.[4]

---

[2] Pretrial Order – ECF No. 43 at 4.

[3] The plaintiff defines "involved officer" to mean, "all law enforcement officers involved in, or present during" the incident. ECF No. 56-1 at 7–8.

[4] *Id.* at 29–30. This request is an especially good example of text that is hard to parse satisfactorily. *See id.* The court has thus tracked the request as described in the parties' joint letter. The particular topics on which the court orders or bars discovery, however, are pulled directly from the request.

The defendants allow that "personnel records are routinely produced."[5] They argue, however, that the production should be limited. They say that the production should "relate directly to the issues of this case."[6] The defendants would thus produce only "complaints relating to firearms, officer involved shootings, truthfulness or any issues regarding report writing or credibility."[7] The plaintiff argues that this production should not be limited to OIS and firearm incidents because (in their view) discoverability turns on whether the force used was excessive, not on the type of force that was used.[8]

**1.2 Holding**

The court holds as follows. The defendants must produce anything related to complaints or "misconduct" in excessive-force cases. They must produce anything concerning "'shoot/don't shoot training" or "any . . . retraining." This would encompass general use-of-force training; that is to say, it is not limited to only deadly-force training. Training on "bias" and "arrest procedure" must also be produced. The parties also seem to agree that material involving "truthfulness," "veracity," and "report-writing" should be produced.

Material relating to "detentions" and "detention procedure" requires better specificity. Insofar as "detention" in the plaintiff's requests means pre-arrest detentions (say, in the manner of a *Terry* stop), this material must be produced. To the extent that "detention" refers to post-arrest detainment (such as confinement in jail), this requests exceeds what is proportional to the needs of this case; such material need not be produced.

The defendants need not produce material related to "discourtesy" or "professionalism and decorum."

---

[5] ECF No. 56 at 5.

[6] *Id.*

[7] *Id.* at 6.

[8] *Id.* at 2 (quoting *Cooley v. City of Vallejo*, No. 2:12-cv-00591-LKK-AC, 2013 U.S. Dist. LEXIS 155175 (E.D. Cal. Oct. 29, 2013)).

United States District Court
Northern District of California

**2. Request #7 — "Training Documents Beyond Use Of Deadly Force"**

This request seeks training materials on 21 topics.[9] Most of this is discoverable. Indeed, the defendants have agreed to produce most of the information sought by this request,[10] and the court concludes that the defendants are mostly correct in their view of what can and cannot be discovered here. Consistently with its disposition of Request #4, above, the court holds that the defendants must produce the requested training material on the following topics:

a) arrest procedure;
b) arrests;
c) detention procedure;[11]
d) detentions;[11]
e) use of force, including deadly force;
f) firearms;
g) "shoot/don't shoot" or similar training;
h) perception/reaction or psycho-physical issues in connection with use of firearms or critical incidents;
i) use of cameras and other recording devices;
j) officer-involved-shooting investigation;
k) internal-affairs investigation;
l) homicide investigation;
m) summoning and/or provision of medical care;
n) report procedures/requirements;
o) bias-based policing;
p) bias;
q) truthfulness;

---

[9] ECF No. 56-1 at 33–34.

[10] ECF No. 56 at 6 ("Defendants have agreed to produce documents related to OPD training regarding the *majority* of the topics under RFP 7 . . . .") (emphasis in original).

[11] The same limitation on the term "detention," discussed above, applies here.

ORDER – No. 16-cv-04132-LB         4

1  r) evidence integrity; and

2  u) code of silence — which the court reads as overlapping with what the defendants call "how
3  to respond to officer involved shooting investigations and/or internal affairs
4  investigations"[12]

5 The defendants need not produce training material on "(s) discourtesy" or "(t) professionalism and
6 decorum."

7  The defendants also suggest that this request is temporally "overbroad," because it covers
8 training that the subject officers received "at any time."[13] The defendants have not elaborated an
9 argument to support this objection. The court thinks that any topically pertinent training material
10 should be produced in discovery, even if a fuller argument may later show that some of the
11 material should be excluded as too remote in time or otherwise too attenuated. Discovery and
12 admissibility involve different standards.

### 3. Requests ## 6, 8, 10 — Personnel Files

Request #6 asks for all documents "concerning" the "hiring, appointment and promotion" of the four defendant officers.[14] Request 8, for material concerning the "job performance, evaluations, and supervision" for all involved officers for the seven years preceding the incident.[15] And Request #10 seeks material concerning' each involved officer's "mental and physical condition at the time of" the incident.[16]

Performance evaluations and supervision-related material (RFP #8) is potentially relevant and must be produced. So must material touching upon the "promotion" (RFP #6) of the defendant officers: promotions being a subset of job evaluations.

---

[12] *See* ECF No. 56-1 at 33–34.

[13] ECF No. 56 at 6; *see* ECF No. 56-1 at 33 ("at all times").

[14] ECF No. 56-1 at 32.

[15] *Id.* at 35.

[16] *Id.* at 36.

Material concerning the "hiring" or "appointment" of the defendants must be produced. In a *Monell* claim, the plaintiff alleges that the municipal defendants "failed to properly hire" the defendant officers.[17] The defendants cite *Brooks v. County of San Joaquin*, 275 F.R.D. 528 (E.D. Cal. 2011) to rebuff the request for hiring documents. And the *Brooks* court did decide that the defendants did not have to produce their "job applications." *Id.* at 534. But *Brooks* did not analyze the point in any that helps our current inquiry. That case simply says: "The potential relevance of these [job applications] is so remote that document discovery will not be permitted." *Id.* at 534 (cited at ECF No. 56 at 6). The present defendants must produce the requested hiring material.

Documents relating to the involved officers' "mental and physical condition" at the time of the incident may yield relevant evidence. Such material is inherently sensitive, however, and calls for extra care. First, the court accepts the plaintiff's assertion that it seeks only such information as was "already in the custody of the OPD in connection with their job performance."[18] Second, the existing protective order should assuage any privacy concerns.

**4. Requests ## 1(a), 1(j), 25 — "Reports" and Electronically Stored Information (ESI)**

**4.1 The Requests**

Requests 1 and 25 broadly seek information concerning the incident in question. Request #1 asks for: "[A]ll DOCUMENTS regarding the INCIDENT . . . and any investigation [of] and/or follow-up to the INCIDENT . . . ."[19] This first RFP is then subdivided into requests for particular types of information. The two that concern this order are 1(a) and 1(j). Request 1(a) asks the defendants to produce: "[P]olice reports, incident reports, narrative/supplemental reports, accident reports, investigation reports, administrative reports, stop data reports, field contact cards, and all other reports . . . ."[20] Request 1(j) seeks "[a]ll logs, daily activity sheets, dispatch information, notes, memoranda, emails, computer records, correspondence, and all other DOCUMENTS

---

[17] Compl. – ECF No. 1 at 10–11 (¶ 39).

[18] ECF No. 56 at 4.

[19] ECF No. 56-1 at 8.

[20] *Id.* at 9.

compiled and/or kept in any format[.]"[21] Request 25 broadens the inquiry to cover both the defendants and all other involved officers; it asks for, "[A]ll text messages, emails, and/or social media posts sent from, or received by, any INVOLVED OFFICER that mention, refer, or relate to the INCIDENT, DECEDENT, or PLAINTIFF, at any time."[22]

### 4.2 The Disputes & Holdings

#### 4.2.1   "Reports"

The parties have several disputes over these requests. The plaintiff first complains that the defendants have wrongly restricted the term "reports" as used in Request #1(a). The plaintiff did not define this term.[23] The defendants object to the "undefined term 'reports'" as "vague and potentially overbroad" and write: "[Defendants] will reasonably construe 'reports' . . . to mean official reports made in the regular course of business . . . by employees of the Oakland Police Department."[24]

The court basically agrees with the plaintiff. The defendants seem to confine the term "report" to such material as meets a threshold test for admission.[25] But "[i]nformation . . . need not be admissible . . . to be discoverable." Fed. R. Civ. P. 26(b)(1). The court thus rejects the defendants' proposed definition as too restrictive. The court suggests the following simple definition: a "report" is "any record of the incident in question, whether formal or informal, made by an employee or agent of the Oakland Police Department." If that does not work, the parties are encouraged to agree upon a suitable definition.[26]

---

[21] *Id.* at 19.

[22] *Id.* at 53.

[23] *See id.* at 7–8.

[24] *Id.* at 9.

[25] *See id.*; Fed. R. Evid. 803(6), (8).

[26] The plaintiff complains that the defendants "unconscionably redefined" the term "reports." (ECF No. 56 at 2.) That is not accurate. Again, the plaintiff never defined the term. The defendants' interpretation was narrower than the plaintiff likes but it was hardly "unconscionable" to propose some working definition.

### 4.2.2   Searching ESI

The parties next disagree over ESI discovery. They argue mainly over how ESI must be searched. The plaintiff's request can be broken down into three heads, gathered from Requests 1(j) and 25. In the language of the joint letter:

- "Plaintiffs request that this court order a search of the defendant officers' emails, cell phones, text messages, and social media for only 90 days following the incident for everything related to this incident, the Plaintiff, or the decedent."

- "Outside of the 90-day window, Plaintiff suggests using search terms including but not limited to 'Perkins', 'sideshow', 'gun', 'airsoft', 'air soft', 'weapon', 'officer involved shooting', 'OIS', 'shooting', and 'Bancroft.'"

- "Plaintiff also requests all emails concerning the incident to and from OPD investigators and command staff. Defendants' proposal to only use search terms is inadequate."[27]

Embedded in these requests is a dispute over how the defendants must search the target ESI. Only the second request above contemplates that the defendants can use keyword searching to find responsive documents. The other two items imply that the defendants must search all such material individually to find responsive items. The plaintiff indeed calls keyword searching "inadequate."[28] The defendants respond that keyword searching is sufficient. They complain that it would be "impracticable" and "oppressive" to make them review every item in the target set to find documents that might be responsive. They mostly accept the plaintiff's proposed search terms for the second item above, except for the term "weapon," which they say is "simply too broad."[29]

The plaintiff cites *National Day Laborer Org. Network v. United States Immigration and Customs Enforcement Agency*, 877 F. Supp. 2d 87 (S.D.N.Y. 2012) to support the view that keyword searches are "inadequate."[30] That case does not persuade that, in the circumstances of this case, such a search would be ineffective or otherwise inappropriate. The plaintiff accurately cites *National Day Laborer* for the following proposition:

---

[27] These bullet points: ECF No. 56 at 4.

[28] *Id.*

[29] *Id.* at 8.

[30] *Id.* at 4.

ORDER – No. 16-cv-04132-LB                 8

> Simple keyword searching is often not enough: "Even in the simplest case requiring a search of on-line e-mail, there is no guarantee that using keywords will always prove sufficient." There is increasingly strong evidence that "[k]eyword search[ing] is not nearly as effective at identifying relevant information as many lawyers would like to believe."

*Id.* at 108–09 (footnotes omitted) (quoting S. Scheindlin et al., *Electronic Discovery and Digital Evidence: Cases and Materials* at 327 (2nd ed. 2012) and M. Grossman & T. Sweeney, *What Lawyers Need to Know About Search Tools: The Alternatives to Keyword Searching Include Linguistic and Mathematical Models for Concept Searching,* Nat. L.J. (Aug. 23, 2010)). But *National Day Laborer* envisaged *more robust* automated searching. *See id.* at 109–10. It pointed "beyond . . . keyword search" to "computer-assisted" and "predictive"-coding approaches like "latent semantic indexing, statistical probability methods, and machine learning tools to find responsive documents." *Id.* at 109. It did not propose falling back on attorneys physically poring over every piece of ESI created in the relevant period.

Additionally, Magistrate Judge Corley of this court has distinguished *National Day Laborer* in a way that applies here. In *Bothwell v. Brennan*, 2015 WL 6689387 (N.D. Cal. Nov. 3, 2015), *aff'd*, 677 F. App'x 335 (9th Cir. 2017), Magistrate Judge Corley rejected a plaintiff's invocation of *National Day Laborer* to deem keyword searching "not enough":

> *National Day Laborer* . . . involved "the largest FOIA search in the history of the" agency [ICE], where the vastness of the search made it unclear whether certain search terms would actually capture all responsive documents. [877 F. Supp. 2d] at 111. There, the court found the search inadequate because the agency had failed to disclose the search terms used at all and directed the parties to meet and confer to choose search terms. *Id.* at 110. Not so here, where the request at issue is limited to documents regarding Roselli, the CIA searched using variations of Roselli's name and aliases, and Bothwell has not actually challenged the search terms used.

*Bothwell*, 2015 WL 6689387 at *5. The same essential reasoning applies here. The court has seen nothing that convinces it that keyword searching will be inadequate in this case.

Two final thoughts. At least one district court has found the enhanced computer-search techniques suggested in *National Day Laborer* to "exceed" the "reasonableness" standard applied to FOIA searches in the relevant circuit. *Bigwood v. United States Dep't of Defense*, 132 F. Supp. 3d 124, 142 (D.D.C. 2015). And, as the defendants point out, this district's ESI "checklist"

contemplates that keyword searches will be at least one ESI-search method that litigants will consider.[31]

The court thus agrees with the defendants. The defendants may search for this material using the plaintiff's suggested terms — except that the defendants need not use the terms "gun" and "weapon." Those words would surely return too much that is irrelevant. The other search terms should adequately capture anything that is relevant to this case and responsive to the plaintiff's substantive request. Such a search would be proportional to the needs of this case.

The court adds the following observation. Toward the end of discovery, when parties' roles and communications are more obvious, it can be helpful to do targeted ESI searches among identified parties and identified times. (For example, all communications among these three people in this two-week period.) This level of specificity is usually possible later in discovery. The court thinks that the initial ESI production may illuminate subsequent targeted searches.

### 4.3.3 Text messages and social-media posts (RFP #25)

Finally, there is the question of the involved officers' text messages and social-media posts. The dispute over this request partly involves the question of how this material must be searched. The defendants say that compelling defense counsel to pore through the officers' text messages and social-media accounts to ferret out responsive material would violate the officers' privacy and would be unduly burdensome.[32] They propose that the officers personally review their devices and accounts to identify any potentially relevant information.[33]

That last suggestion seems unsatisfying. Two concerns are interwoven here: the mode of the search and the officers' privacy. As with the requested ESI generally, the court holds that keyword searching is a sufficient method for tackling the text messages and social-media posts. That should

---

[31] *See* U.S. District Court for the Northern District of California, *Checklist for Rule 26(f) Meet and Confer Regarding Electronically Stored Information* 2 (§ V) (maintained at http://www.cand.uscourts.gov/eDiscoveryGuidelines).

[32] ECF No. 56 at 8.

[33] *Id.*

answer the defendants' concern about the burden of the search. And it should partly relieve concerns about the defendants' lawyers rummaging through the officers' private information. But this assumes that it is technically possible to conduct such a search on the officers' devices and social-media accounts. The defendants have not suggested that searching these things is technically impracticable. But the parties do not broach the issue.

The record allows the court only to say that the defendants may respond to Request #25 by keyword searching the involved officers' text messages and social-media posts — the yield of such a search being subject to the existing protective order. If the parties wish to more fully address the legal and technical issues attendant to discovering material from such sources, then they may do so in a joint letter directed to that specific issue.[34]

## CONCLUSION

Production is ordered or denied according to the preceding discussion. This disposes of ECF No. 56.

**IT IS SO ORDERED.**

Dated: July 17, 2017

LAUREL BEELER
United States Magistrate Judge

---

[34] The court does not see what the parties' specific dispute is with respect to RFPs 1(d) and (i). Those requests may involve only issues that this order has already discussed (such as using keyword searches). If there are other disputes related to these requests, the joint letter does not reveal them.